# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| **BRC RUBBER & PLASTICS, INC.,** *an Indiana corporation*, | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) |
| **CONTINENTAL CARBON COMPANY,** *a Delaware corporation*, | ) ) ) ) |
| **Defendant.** | ) ) |

CAUSE NO. 1:11-cv-00190-SLC

## OPINION AND ORDER

On August 22, 2019, this Court issued an Opinion and Order (the "Order") setting forth Findings of Fact and Conclusions of Law following a bench trial in this case filed by Plaintiff BRC Rubber & Plastics, Inc. ("BRC"), against Defendant Continental Carbon Company ("Continental"), concluding that BRC had proven by a preponderance of the evidence its claim that Continental had repudiated a five-year Agreement to supply BRC with approximately 1.8 million pounds of carbon black annually.[1] (ECF 227). The Court awarded BRC damages in the amount of $842,683.37, which represents the costs that BRC incurred in purchasing carbon black from another supplier as cover after Continental's repudiation of the Agreement. (*Id.* at 30). In the Order, the Court took under advisement BRC's request for an award of prejudgment interest, observing that BRC first requested prejudgment interest in the last sentence of its proposed findings of fact and conclusions of law submitted after the trial. (*Id.* at 30-31). The Court afforded the parties an opportunity to submit supplemental briefs on the issue, and these

---

[1] The Court presumes the reader is familiar with the lengthy factual and procedural background of this case (*see, e.g.*, ECF 127, 194, 227), so it will not be repeated here. The terms defined in the Order shall have same meaning herein. Likewise, the transcripts of the trial (ECF 219, 220) will be referred to as "Tr. __," and the exhibits submitted at the trial as "Ex. __."

briefs have now been considered. (*See* ECF 228, 229, 231, 234). For the following reasons, the Court FINDS that BRC is entitled to prejudgment interest in the amount of $400,184.12.

## A. Applicable Law

"The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss." *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys. Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (citations omitted); *see Ind. Ins. Co. v. Sentry Ins. Co.*, 437 N.E.2d 1381, 1391 (Ind. Ct. App. 1982) ("The award of prejudgment interest is founded solely upon the theory that there has been a deprivation of the use of money or its equivalent and that unless interest is added the injured party cannot be fully compensated for the loss suffered." (citation omitted)). "In diversity actions, federal courts must look to state law to determine the propriety of awarding prejudgment interest." *Dale R. Horning Co. v. Falconer Glass Indus., Inc.*, 730 F. Supp. 962, 969 (S.D. Ind. 1990) (citing *Travelers Ins. Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1051 (7th Cir. 1988)).

In Indiana, "[p]rejudgment interest is awarded where the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued." *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 441 (Ind. Ct. App. 2000) (citation and internal quotation marks omitted). "After it has been determined that a party is liable for damages, prejudgment interest is appropriate only when a 'simple mathematical computation' is required." *Id.* (citation omitted); *see Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 757 (Ind. 2018) ("An award of prejudgment interest in a contract action is appropriate purely as a matter of law when the breach did not arise from tortious

conduct, the amount of the claim rests on a simple calculation, and the trier of fact does not need to exercise its judgment to assess the amount of damages." (citations and footnote omitted)).

> Examples of cases where prejudgment interest is appropriate include those for breach of contract when the damages were principal payments made under a promissory note; the amount of a mechanics' lien for a contractor's unpaid bills for a remodeling project; and an amount stipulated to at a damages hearing. In these cases, the amount of damages was clear and did not require any interpretation or judgment on the part of the trier of fact.

*WESCO Distrib., Inc. v. ArcelorMittal Ind. Harbor LLC*, 23 N.E.3d 682, 714 (Ind. Ct. App. 2014) (internal citations omitted).

Notwithstanding the foregoing, prejudgment interest "has been allowed even where some degree of judgment must be used to measure damages." *Cincinnati Ins. Co.*, 723 N.E.2d at 441.

> Prejudgment interest on damages may be appropriate even though the fact finder has to use some degree of judgment in measuring damages; the question in each case must turn on its facts depending on whether the jury appears to have been able to make a computation "according to known standards of value," or whether its award was by necessity largely a matter of subjective judgment about the value of certain losses. In resolving this question, factors such as the difference between the jury award and the amount sought, the nature and completeness of plaintiff's proof and the nature of the defendant's proof on damages, if any, are relevant.

*Pub. Serv. Co. of Ind., Inc. v. Bath Iron Works Corp.*, 773 F.2d 783, 796 (7th Cir. 1985) (internal citation omitted) (applying Indiana law).

A request for prejudgment interest raised for the first time in a post-trial motion is timely. *See Brooms v. Regal Tube Co.*, 881 F.2d 412, 424 n.9 (7th Cir. 1989), *overruled in part on other grounds by Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 n.12 (7th Cir. 1993). That is, a plaintiff does not waive a request for prejudgment interest by failing to raise it in the complaint or even the final pretrial order. *See RK Co. v. See*, 622 F.3d 846, 853 (7th Cir. 2010) (stating

that a failure to request prejudgment interest in a final pretrial order did not result in waiver); *Brenton H. v. Bd. of Educ. of City of Chi.*, No. 10-cv-1360, 2011 WL 4501408, at *6 (N.D. Ill. Sept. 28, 2011) (rejecting defendant's argument that plaintiff had waived prejudgment interest where he did not raise it in his complaint). "[A]n award of prejudgment interest is generally not considered a matter of discretion." *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 578 (Ind. Ct. App. 2003); *see also AM Gen. LLC v. Demmer Corp.*, No. 3:12-CV-00333-WCL-RBC, 2015 WL 1256370, at *10 (N.D. Ind. Mar. 18, 2015).

"Prejudgment interest is computed from the time the principal amount was demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate." *Cincinnati Ins. Co.*, 723 N.E.2d at 441. Where the parties have not agreed to an interest rate, Indiana law supplies a rate of eight percent per annum.[2] *Care Grp. Heart Hosp., LLC*, 93 N.E.3d at 757 (citing Ind. Code § 24-4.6-1-102); *see also Firstmark Standard Life Ins. Co.*, 699 N.E.2d at 693.

*C. Discussion*

1. <u>BRC's Proposed Calculation of Prejudgment Interest</u>

In its motion, BRC seeks an award of prejudgment interest in the amount of $383,561.12, plus $184.70 per day until the Court enters the judgment in BRC's favor. BRC arrives at this amount by calculating the difference between the cost of carbon black that it purchased from a another supplier, Sid Richardson, as cover after Continental repudiated the Agreement,[3] and the

---

[2] Prejudgment interest is not compounded absent an underlying agreement of the parties. *Firstmark Standard Life Ins. Co. v. Goss*, 699 N.E.2d 689, 693-94 (Ind. Ct. App. 1998).

[3] BRC entered into an agreement with Sid Richardson in October 2011, whereby Sid Richardson supplied carbon black to BRC from January 1, 2012, to December 31, 2014. (ECF 227 at 12 (citing Tr. 63; Ex. 67)).

cost of carbon black that BRC would have purchased from Continental under the Agreement. (ECF 229 at 4-5).

At trial, Michael Cornwell, BRC's vice president of materials, provided a spreadsheet comparing the price BRC paid to Sid Richardson for orders of carbon black to the price BRC would have paid to Continental under the Agreement. (Tr. 65-66; Ex. 72). Per the spreadsheet, BRC paid Sid Richardson $287,577.48 more for carbon black in 2012, $280,679.99 more for carbon black in 2013, and $274,425.90 more for carbon black in 2014 than BRC would have paid to Continental under the Agreement. (ECF 229 at 4; Ex. 72).

For purposes of calculating prejudgment interest, BRC contends that its damages "became readily ascertainable at the conclusion of 2012." (ECF 229 at 5); *see Hooker Bldgs., Inc. v. Smalley*, 691 N.E.2d 1256, 1258 (Ind. Ct. App. 1998) ("A party is entitled to an award of [prejudgment] interest only where the amount of damages is readily ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. Damages are readily ascertainable where the trier of fact need not exercise its judgment to assess the amount of damages." (citations omitted)). BRC calculates its prejudgment interest as follows:

(a) $287,577.48 (BRC's damages for calendar year 2012), multiplied by eight percent (Indiana's statutory rate of interest), for the period of January 1, 2013, to the date of judgment; plus

(b) $280,679.99 (BRC's damages for calendar year 2013), multiplied by eight percent, for the period of January 1, 2014, to the date of judgment; plus

(c) $274,425.90 (BRC's damages for calendar year 2014), multiplied by eight percent, for the period of January 1, 2015, to the date of judgment.

5

(ECF 229 at 5; ECF 229-2). BRC states that the per diem amount of prejudgment interest is $184.70. (ECF 229 at 5; ECF 229-2).

2. Continental's Arguments

In response, Continental agrees that Indiana law applies to the issue of prejudgment interest, that the applicable simple interest rate under Indiana law is eight percent, and that raising the issue of prejudgment interest for the first time in a post-trial brief does not result in waiver. (ECF 231 at 1). Nor does Continental dispute the time periods for which BRC seeks prejudgment interest. Continental does dispute, however, that the amount of damages in this matter required only a "simple mathematical computation." (*Id.* at 3).

On that point, Continental emphasizes that BRC had a duty to mitigate its damages once Continental repudiated the Agreement, and that "good faith and reasonableness of BRC's cover remedy was at the center of the Court's determination of damages in this case." (*Id.* at 6). As Continental points out, the Court explained in the Order that "[t]he test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective." (ECF 227 at 28 (citing U.C.C. § 2-712, cmt 2)).

To that end, Continental states that it offered evidence that BRC would have paid much less for *all* of its carbon black if it had accepted Continental's offer to enter into a new contract with Continental in August of 2011. (ECF 231 at 6; *see* ECF 227 at 12 ("Huntley believed that Continental offered superior economics compared to its competitors that could have saved BRC over $1 million during the life of the contract. (Tr. 349; Ex. 64). Ultimately, the two parties did not reach a new agreement. (*E.g.*, Tr. 255)."))). Continental contends that it offered evidence

6

that BRC's decision to enter into a three-year contract with Sid Richardson "was dictated by a desire to line up a damages case in the lawsuit, not for normal business reasons." (ECF 231 at 6-7). Continental acknowledges that the Court ultimately rejected these arguments, finding that "[e]vidence shows that BRC's reasons for rejecting Continental's offer went beyond the terms of a potential contract—that is, BRC lacked confidence in Continental as a supplier." (ECF 231 (quoting ECF 227 at 28-29)).

As Continental sees it, the Court's conclusion that BRC's lack of trust in Continental influenced BRC's choice to secure a higher-price cover means that the determination of damages in this matter was not a "simple mathematical computation." Rather, Continental urges that the Court had to exercise its judgment in awarding damages by assessing BRC's subjective explanations for its decision and the objective reasonableness of that decision, negating the availability of prejudgment interest. While Continental acknowledges that prejudgment interest has been awarded in some cases even though "some degree of judgment must be used to measure damages," *Cincinnati Ins. Co.*, 723 N.E.2d at 440, Continental contends that the instant circumstances are not analogous to those cases. (*See* ECF 231 at 7-9 (citations omitted)).

    3.  Analysis

As stated above, BRC produced a spreadsheet at trial comparing the price of carbon black that BRC paid to Sid Richardson for years 2012, 2013, and 2014, versus the price that BRC would have paid to Continental under the Agreement. (Ex. 72). The "simple mathematical calculation" of the difference between the two prices constitutes BRC's damages in this action.

At trial, Continental did not challenge BRC's method of calculating its damages as reflected on the spreadsheet or the validity of such damages. Rather, Continental raised the

7

affirmative defense of failure to mitigate, arguing that BRC failed to mitigate its damages by electing higher-price cover from Sid Richardson over entering into a new, more economical contract with Continental in August 2011. (*See* ECF 227 at 28-30). In advancing this defense, Continental argued, in essence, that BRC's damages amounted to what BRC would have paid for carbon black under a new contract with Continental in August 2011, less what BRC would have paid Continental for carbon black under the Agreement. (*See* ECF 226 at 34-35; ECF 227 at 28; Tr. 349). But this damages scenario, too, involves just a "simple mathematical calculation"—that is, subtracting one price of carbon black from another. Therefore, even if the Court had adopted Continental's version of damages, which it did not, prejudgment interest would still be appropriate in this case.

In opposing an award of prejudgment interest, Continental attempts to distinguish the instant circumstances from various cases in which prejudgment interest was awarded under Indiana law even though some degree of judgment was used to measure damages. (ECF 231 at 7-9 (citing *Cincinnati Ins. Co.*, 723 N.E.2d at 441 (awarding prejudgment interest despite that "some degree of judgment" relating to the calculation of expenses incurred by the manufacturer was added to the fixed daily coverage amount specified in the insurance policy); *Harlan Sprague Dawley, Inc. v. S.E. Lab Grp.*, 644 N.E.2d 615, 618 (Ind. Ct. App. 1994) (awarding prejudgment interest on the plaintiff's estimate of the value of lost animals and related labor costs); *Ind. Bell Tel. Co. v. Thrifty Call, Inc.*, No. IP 02-0170-C-H/K, 2005 WL 552260, at *4 (S.D. Ind. Feb. 11, 2005) (awarding prejudgment interest where the factfinder chose between one of three estimates of total minutes of long distance calls))).[4] Continental contends that all of the cited cases

---

[4] In turn, *Indiana Bell Telephone Co.* collects the following cases in which prejudgment interest was awarded despite the exercise of "some judgment":

8

involved differing views of which "fixed standards of value" should apply, in contrast to "the non-mathematical element that made the difference in this case" (ECF 231 at 9)—that is, BRC's lack of confidence in Continental as a supplier (*id.* at 7, 9).

But Continental's attempt to distinguish these cases is unpersuasive. "While damages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest, damages can still be ascertained through accepted standards of valuation and fixed rules of evidence regardless of which party's method of computation the jury selects." *Harlan Sprague Dawley, Inc.*, 644 N.E.2d at 618 (citations omitted). Here, Continental did not dispute the quantity of carbon black that BRC sought as cover—1.8 million pounds in each 2012, 2013, and 2014—or the amount BRC would have paid to Continental for the carbon black under the Agreement.[5] Thus, the only determination left to the factfinder was whether the cover price that BRC paid to Sid Richardson for the carbon black was reasonable.

> *Luksus v. United Pacific Ins. Co.*, 452 F.2d 207 (7th Cir. 1971) (interest awarded from various dates that sums owed for labor, services, rental of equipment, bonuses, etc. were later found to be due); *N.Y., Chicago & St. L. Ry. Co. v. Roper*, 176 Ind. 497, 96 N.E. 468 (1911) (interest award upheld where measure of damages after fire was fair market value of house); *Indiana Industries, Inc. v. Wedge Products, Inc.*, Ind. App., 430 N.E.2d 419 (3d Dist. 1982) (interest awarded for inventory even though original claim substantially differed from damages subsequently sought, and from those awarded); *N.Y. Central Ry. Co. v. Churchill*, 140 Ind. App. 426, 218 N.E.2d 372 (2d Div. 1966) (interest allowed where fair market value of tractor, though disputed, was easily ascertainable with a degree of certainty); *Kubn v. Powell*, 61 Ind. App. 131, 111 N.E. 639 (1916) (interest allowed despite dispute over amount due per bushel of corn under unwritten contract).

*Ind. Bell Tel. Co.*, 2005 WL 552260, at *3.

[5] While BRC initially sought damages for Continental's alleged failure to supply all of BRC's requirements of carbon black (ECF 1, 6), this does not preclude prejudgment interest on BRC's claim at trial that Continental failed to supply the lesser amount of 1.8 million pounds of carbon black annually. "Where a good faith dispute exists concerning a portion of a claim, interest is properly limited to the undisputed (ascertainable) portion of the claim." *N. Ind. Pub. Serv. Co.*, 595 N.E.2d at 279; *see also Gibson-Lewis Corp. v. N. Ind. Pub. Serv. Co.*, 524 N.E.2d 1316, 1319 (Ind. Ct. App. 1988) ("Because there was a good faith dispute as to whether Gibson was entitled to additional compensation for work done on Column Row 25 and as to how much that work was worth, it was not error for the trial court to limit pre-judgment interest to the undisputed portion of Gibson's claim.").

On that point, *Public Service Co. of Indiana, Inc. v. Bath Iron Works Corp.*, 773 F.2d 783 (7th Cir. 1985), is instructive. Public Service Co. of Indiana ("PSI") brought negligence and strict liability claims against Bath Iron Works Corp. ("Bath"), after a conical head PSI purchased from Bath for use in a coal pulverizing mill allegedly failed. *Id.* Another plaintiff, Riley Stoker Corporation ("Riley"), the manufacturer of the conical head, sued Bath for breach of the contract, seeking to recover expenses it incurred in attempting to repair the conical head. *Id.* Similar to Continental, Bath argued that because the jury had to determine whether the amounts Riley incurred were reasonable, the jury had to exercise its subjective judgment, which precluded prejudgment interest. *Id.* at 797. The Seventh Circuit Court of Appeals disagreed, explaining:

> In this case, virtually all of Riley's proof on damages consisted of invoices showing direct expenses that Riley incurred as the result of its attempts to repair the conical head after it failed. Bath argues that the jury had to determine whether these amounts were reasonable and so had to use its subjective judgment, thus precluding prejudgment interest. But juries often have to make determinations about whether claimed damages are "reasonable," and if this were determinative, prejudgment interest would rarely be awarded. Here Riley broke down for the jury what charges were incurred for what purpose, and showed the specific amounts that it had paid. Bath of course cross-examined Riley's witnesses, but presented no evidence of its own to indicate that some or all items of damages were not properly attributable to the costs of repair or were unreasonable in amount. The jury obviously decided that some items were unreasonable for one reason or another. Nevertheless, under all the circumstances, we believe that Riley's damages were ascertainable as of a particular time according to known standards of value.

*Id.* at 796-97.

Here, the circumstances differ slightly from *Public Service Co. of Indiana, Inc.*, in that Continental did present its own evidence—in the form of Continental's August 2011 proposal to

10

BRC and the testimony of Darryl Huntley, Continental's national sales manager—that BRC's proposed damages were unreasonable in amount. (*See* Exs. 62-64; Tr. 349). But that difference does not preclude the guidance that *Public Service Co. of Indiana, Inc.*, offers. Continental's failure-to-mitigate defense rested solely upon its *own* pricing proposal, which the Court easily discarded, explaining that "the fact that Continental proved to be the cheapest option is immaterial." (ECF 227 at 29 (citing *Huntington Beach Union High Sch. Dist. v. Cont'l Info. Sys. Corp.*, 621 F.2d 353, 357 (9th Cir. 1980))). Further, in *Public Service Co. of Indiana, Inc.*, the Seventh Circuit found that Riley's damages were ascertainable as of a particular time according to known standards of value *even though* the jury found that some of Riley's damages were unreasonable. 773 F.2d at 797. Here, in contrast, BRC was awarded *all* of the damages it requested at trial. (ECF 227 at 30); *cf. WESCO Distrib., Inc.*, 23 N.E.3d at 714-15 (reversing award of prejudgment interest, concluding that the jury exercised judgment in arriving at a damages amount where the verdict was approximately ten million dollars less than the total damages claimed by the plaintiff).

Considering all of the circumstances, the Court concludes that while it had to exercise some degree of judgment in measuring damages, BRC's damages were ascertainable as of a particular time according to known standards of value. Consequently, BRC is entitled to prejudgment interest at the rate of eight percent for the time periods and in the amounts requested: $383, 561.12, plus $184.70 per diem through the date of judgment (90 days), which totals $400,184.12.

11

*D. Conclusion*

For the foregoing reasons, the Court GRANTS BRC's motion for prejudgment interest (ECF 228) and FINDS that BRC is entitled to prejudgment interest at the rate of eight percent for the time periods and in the amounts requested, totaling $400,184.12. The Clerk is DIRECTED to enter a judgment in favor of BRC and against Continental in the amount of $842,683.37 in damages plus costs (ECF 227 at 31), plus prejudgment interest in the amount of $400,184.12.

SO ORDERED.

Entered this 3rd day of December 2019.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge